UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **MARC A. PERGAMENT, AS CHAPTER 7 TRUSTEE OF THE ESTATE OF GERSHON BARKANY,** | : : : : : | Civil Action No. 14-cv-02602 (RJD-JO) |
| Plaintiff, | : : | |
| v. | : : | *Via ECF* |
| **MARINA DISTRICT DEVELOPMENT CO., LLC d/b/a BORGATA HOTEL CASINO & SPA,** | : : : : | |
| Defendant. | : : | |

_____

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

_____

## **Table of Contents**

Table of Authorities .................................................................................................... ii

Preliminary Statement ................................................................................................. 1

Statement of Facts ........................................................................................................ 1

Argument ....................................................................................................................... 3

Point I:   STANDARD OF REVIEW ................................................................. 3

Point II:  PLAINTIFF CANNOT ESTABLISH THE ELEMENTS FOR
          CLAIMS OF ACTUAL FRAUD ......................................................... 5

          A.  Plaintiff's Complaint Fails to Plead Actual Fraud ........................... 6

          B.  Plaintiff's Complaint Fails to Plead and Badges of Fraud ............... 7

          C.  The Ponzi Scheme Presumption Does Not Apply ........................... 9

          D.  Plaintiff's Complaint Fails to Plead Borgata's Knowledge of
              Fraud .......................................................................................... 12

Point III: PLAINTIFF'S CLAIMS FOR CONSTRUCTIVE FRAUD
          MUST BE DISMISSIED BECAUSE THERE IS FAIR
          CONSIDERATION AS A MATTER OF LAW ................................... 18

Point IV: PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST
          ENRICHMENT .................................................................................. 19

Point V:  REPLEADING WOULD BE FUTILE ................................................ 20

Conclusion ................................................................................................................... 21

**Table of Authorities**

**Cases**                                                                                                           **Page**

*Abacus Federal Savings & Loan v. Lim*, 905 N.Y.S.2d 585 (1st Dept. 2010) .................19

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ........................................................................5, 7

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ......................................... 4-5

*Drenis v. Haligiannis*, 452 F. Supp. 2d 418 (S.D.N.Y. 2006) ...........................................9

*Foman v. Davis*, 371 U.S. 178, 182 (1962) .....................................................................20

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) .................................................................4

*HBE Leasing Corp. v. Frank*, 48 F.3d 623 (2d Cir. 1995) .........................12-15, 18-19, 21

*In re Actrade Financial Technologies Ltd.*,
     337 B.R. 791 (Bankr. S.D.N.Y. 2005) ..................................................... 7-8, 12

*In re Armstrong*, 259 B.R. 338 .................................................................. 15-17

*In re Chomakos,* 69 F.3d 769 (6th Cir. 1995) .................................................8, 11, 18, 21

*In re Dreier LLP*, 452 B.R. 391 (Bankr. S.D.N.Y. 2011) .............................................6, 12

*In re Janitorial City Close-Out Corp.*, 2013 WL 492375 (Bankr. E.D.N.Y. 2013) ..........13

*In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1 (S.D.N.Y. 2007)....................................... 9-10

*In re Sharp Int'l Corp.*, 403 F.3d 43 (2d Cir. 2005) .....................................................7, 18

*Parsa v. State of New York,* 64 N.Y.2d 143 (1984) .........................................................19

*Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123 (2d Cir. 2001).................4

*Rutolo v. City of New York*, 514 F.3d 184 (2d Cir. 2006).................................................20

*Silverman v. Meister Seelig & Fein, LLP*, 467 B.R. 556 (Bankr. E.D.N.Y. 2012) ..........10

*Wall St. Assocs. v. Brodsky,* 684 N.Y.S.2d 244 (1st Dep't 1999) ........................................7

**Statutes**                                                                 **Page**

11 U.S.C. §548(a)(1)(A) ..................................................................5, 12

11 U.S.C. §548(a)(1)(B)(ii) ..................................................................18

CPLR §3218(a)(2) ..................................................................4, n.1

NY DCL §273..................................................................18

NY DCL §275..................................................................18

NY DCL §276..................................................................5-6, 12, 17

NY DCL §278(1) ..................................................................5-6, 13, 17


**Rules and Regulations**                                                    **Page**

Fed. R. Civ. P. 9(b). ..................................................................6-7

N.J.A.C. §19:45 ..................................................................6


**Other**                                                                    **Page**

22A N.Y. Jur. 2d, Contracts, § 520, at 244..................................................................20

**Preliminary Statement**

Plaintiff's Complaint against Marina District Development Co., LLC ("Borgata") must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  There were no fraudulent conveyances to Borgata from Debtor Gershon Barkany ("Barkany") recoverable by Plaintiff as a matter of law.

**Statement of Facts**

The transfers at issue in this case were repayment of credit markers extended to Barkany by Borgata.  Barkany used some or all of the credit for gaming at Borgata's Atlantic City casino from 2009-2013.  On March 27, 2013, subsequent to the transfers at issue in this case, Barkany was charged via Information with wire fraud in connection with a Ponzi scheme he perpetrated.  According to the Information, Barkany fraudulently induced investors to invest money with the premise that it would be used to purchase real estate.  Instead of using the investors' money to purchase real estate, Barkany used the funds to pay other investors, make donations to charity, and fund his own lifestyle. Unbeknownst to many of Barkany's creditors, including Borgata, Barkany originally admitted to his Ponzi scheme in about August 2011 in an Affidavit of Confession of Judgment given to the assignors/members of the original plaintiff in this action, Barkany Asset Recovery and Management LLC ("BARM").  These original judgment creditors were allegedly victims of Barkany's scheme.  The Affidavit was provided to these creditors pursuant to CPLR §3218(a) in order to record an accompanying consent judgment in their favor with the Supreme Court of the State of New York.  The affidavit and judgment were not filed and recorded until March 25, 2013, again, after the transfers

1

at issue in this case.  On or about August 14, 2013, the New York judgment was assigned to BARM.[1]

BARM was nothing more than a rogue group of Barkany victims.  Rather than bring Barkany's fraud to light in 2011, BARM's predecessors held the affidavit and judgment for almost 20 months.  This led Barkany creditors, including Borgata, to continue extending credit to Barkany.  In fact, Borgata raised Barkany's credit limit by $100,000 in March 2012 based on an application in which Barkany fraudulently omitted the existence of the BARM judgment.  Since the judgment was not recorded until March 25, 2013, Borgata did not and could not have discovered Barkany's Ponzi scheme.  As a result, Borgata is still owed approximately $250,000 by Barkany and has a claim pending in his bankruptcy proceeding.  Borgata is as much a victim in this affair as any other.

## Argument

### Point I

### STANDARD OF REVIEW

A motion to dismiss is properly evaluated under the familiar Fed. R. Civ. P. 12(b)(6) standard.  Pursuant to Rule 12(b)(6), courts "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001).  This principle, however, is not applicable to legal conclusions.  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  In addition, "factual allegations must be enough to raise a right to

---

[1] Although not at issue here, Barkany's August 2011 Affidavit of Confession of Judgment does not satisfy the requisites of CPLR §3218(a)(2) and is subject to collateral attack. Specifically, the Affidavit fails to set forth the basis upon which the judgment amount is calculated, stating instead that it is an approximation of the amount due.

2

relief above the speculative level," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(citation omitted).

Plaintiff's Second Amended Complaint ("Complaint") contains six causes of action against Borgata.  The first three sound in fraudulent conveyance under the New York Debtor and Creditor Law ("NY DCL").  The fourth and fifth claims also sound in fraudulent transfer under the United States Bankruptcy Code (11 U.S.C.).  The final cause of action is for unjust enrichment.  Even accepting the factual allegations in the Complaint as true, Plaintiff's legal conclusions are contrary to established legal principles.  Because the facts alleged in the Complaint and do not raise a right or rights to relief as a matter of law, Borgata is entitled to dismissal of all claims.

**Point II**

PLAINTIFF CANNOT ESTABLISH THE ELEMENTS
FOR CLAIMS OF ACTUAL FRAUD

New York DCL §276 provides "[e]very conveyance made...with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  Bankruptcy Code §548(a)(1)(A) similarly provides that a Trustee may avoid any transfer made by a debtor if such transfer was made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted."  NY DCL §278(1) further restricts setting aside fraudulent conveyances under NY DCL §276 where the transferee is "a purchaser for fair

3

consideration without knowledge of the fraud at the time of the purchase." For Plaintiff to succeed he must therefore establish (i) actual fraudulent intent of Barkany in making the transfers, and (ii) that Borgata had knowledge of Barkany's fraud at the time of the transfers.  NY DCL §§276, 278(1).   His Complaint is both legally and factually deficient in this regard.

As an initial matter, the Court should understand that Borgata is required by applicable New Jersey regulations to collect on casino credit extended to its patrons within 45 days.  In order to draw on a casino line of credit, a patron requests a "marker" for a specified amount.  The "marker" is a counter check, generated by the casino system, with the patron's banking information, including ABA routing number and account number (provided by the patron in his credit application), and made payable to the casino. The patron signs the check, which is held as security against repayment of the credit. When a marker is requested, the marker is issued at the gaming table or directly from the casino cage cashier.  New Jersey Division of Gaming Enforcement ("DGE") regulations require that casino credit be repaid within 45 days on all markers with a dollar amount in excess of $5,000.00.  If the credit is not repaid within 45 days, the casino is required to deposit the "marker" in satisfaction of the liability.  _See_ N.J.A.C. §19:45 _et seq._

A.  Plaintiff's Complaint Fails to Plead Actual Fraud.

Actual fraud (as opposed to constructive fraud) must be plead with particularity, i.e., it must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b).  _In re Dreier LLP_, 452 B.R. 391 (Bankr. S.D.N.Y. 2011).  Plaintiff must therefore allege specific facts establishing Barkany's actual fraudulent intent in making transfers to Borgata.  _Id._  There are no facts alleged in the Complaint regarding Barkany's intent, fraudulent or otherwise.

The Complaint contains a single "threadbare recital" of only one of the elements necessary to Plaintiff's actual fraud claim - the "mere conclusory statement" that "[t]he Transfers were made with the actual intent to hinder, delay or defraud...." Complaint ¶65, 71. This allegation does not satisfy any federal pleading standard, much less the heightened standard of Fed. R. Civ. P. 9(b). *Iqbal*, 556 U.S. at 662. Borgata anticipates that Plaintiff will instead rely on the so-called Ponzi scheme presumption to establish actual fraud. That presumption is inapplicable to the transfers at issue in this case as discussed below at Point II(C).

    B.  <u>Plaintiff's Complaint Fails to Plead and Badges of Fraud</u>.

Giving Plaintiff every benefit of doubt, Borgata notes that badges of fraud may be plead in cases where actual fraud is difficult to prove. In *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) the Second Circuit noted "'due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is also allowed to rely on 'badges of fraud' to support his case, i.e. circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.'" <u>*Id.*</u> at 56, *quoting* *Wall St. Assocs. v. Brodsky,* 684 N.Y.S.2d 244, 247 (1st Dep't 1999). The Second Circuit also indicated that "a lack of specific allegations setting forth such badges of fraud, or otherwise implicating the defendant in intentional wrongdoing against creditors, would be fatal to a claim of intentional fraudulent conveyance." *In re Actrade Financial Technologies Ltd.*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005). Since Plaintiff's Complaint does not contain any specific allegations of fraud, this Court should examine allegations regarding any badges of fraud in the transfers to Borgata. The Complaint is devoid of those as well.

The court in *Actrade* provided a fairly exhaustive lust of the common badges of fraud that can give rise to an inference of intent.  Absent specific facts establishing fraud or pleading of these badges, a complaint for actual fraudulent conveyance cannot stand:

(1) lack or inadequacy of consideration;
(2) the family, friendship or close associate relationship between the parties;
(3) the retention of possession, benefit or use of the property in question;
(4) the financial condition of the party sought to be charged both before and after the transaction in question;
(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;
(6) the general chronology of the events and transactions under inquiry;
(7) a questionable transfer not in the usual course of business; and
(8) the secrecy, haste, or unusualness of the transaction.

*Id*.

Plaintiff arguably identifies one badge of fraud - inadequacy of consideration.  Setting aside that the allegations regarding consideration are conclusory themselves, Complaint ¶¶54, 60, 75, adequacy of consideration is not considered in an actual fraud claim.  Even if it were relevant to these claims, Plaintiff ignores the well settled legal principle that the opportunity of winning more than the amount bet and the entertainment value of gambling constitute fair consideration.  *In re Chomakos*, 69 F.3d 769 (6th Cir. 1995).

Absent the conclusory allegations regarding consideration, Plaintiff does not identify any other badge of fraud.  He does not allege a relationship between Barkany and Borgata, any inappropriateness in Borgata's having been paid back, or any negative impact on Barkany's financial condition (he was actually less in debt after the transfers were made).  It is not alleged, and there is no pattern of transactions occurring after an onset of financial difficulties.  The chronology of events demonstrates the transfers were

all made before the purported BARM judgment and Ponzi scheme were revealed. Plaintiff does not and cannot allege the transfers were questionable, unusual or made in haste.  There are no allegations Barkany kept his trips to Borgata a secret.  Instead, Plaintiff alleges that Borgata representatives visited Barkany at his home and/or office, and implies Barkany may have been flown by Borgata from New York to Atlantic City. Complaint ¶¶15, 17. Gaming is not unusual.  The Court can take judicial notice of the fact that it is a multi-billion dollar industry. In 2013, United States casinos (and the makers of the games found inside them) had a $240 billion economic impact and employed an astounding 1.7 million people.  The industry generated $38 billion in local, state and federal taxes.  *See* http://www.businessinsider.com/the-us-gambling-industry-is-worth-240-billion-2014-9.  Finally, and according to Plaintiff himself, the transfers at issue were not made in secrecy or haste.  They were consistently made over the course of a number of years.  Complaint ¶51.  Because Plaintiff has failed to plead fraud or any badges of fraud, his fraud claims must be dismissed.  Again, it is presumed Plaintiff will rely on the Ponzi scheme presumption to establish actual fraud.

    C.  <u>The Ponzi Scheme Presumption Does Not Apply</u>.

Plaintiff will argue he is relieved of pleading actual fraud with specificity because the Ponzi scheme presumption applies to his claims against Borgata.  This is an incorrect application of the law.  Borgata concedes there is a general rule that a Ponzi scheme demonstrates actual intent to hinder, delay, or defraud creditors as a matter of law.  *See Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 429-430 (S.D.N.Y. 2006).  There are, however, only certain transfers to which this presumption is applicable.  The Court in *In*

*re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 8 (S.D.N.Y. 2007)(internal citations omitted) defines the types of transfers that may be subject to the presumption:

> In such a scheme, money from new investors is used to pay artificially high returns to earlier investors in order to create an appearance of profitability and attract new investors so as to perpetuate the scheme.... such a scheme demonstrates "actual intent" as matter of law because transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors.

The court's opinion in *Silverman v. Meister Seelig & Fein, LLP*, 467 B.R. 556, 570 (Bankr. E.D.N.Y. 2012) drives the point home. "The sole exception to the Ponzi scheme presumption is where the transfers at issue are so unrelated to the Ponzi scheme that the *transfers do not serve to further the Ponzi scheme*." (Emphasis added.) Stated in reverse, the Ponzi scheme presumption applies to transfers that make the investment look profitable in order to attract future investors and thereby "further the Ponzi scheme." The transfers to Borgata were not transfers made in the course of a Ponzi scheme because they were not made to create an appearance of profitability, attract new investors, or further the scheme in any way. Borgata was not an investor in Barkany's sham transactions and did not receive artificially high returns paid out of later investor money. Thus, the Borgata transfers did not create an appearance of profitability or attract new investors. There is not even an allegation that any of Barkany's victims knew he was gaming at Borgata. If anything, transfers to Borgata may have reduced the amount of money available to pay artificially high returns and therefore would have negatively impacted the appearance of profitability. Equally important, Barkany started gaming at Borgata long before his Ponzi scheme began. It should go without saying that Barkany's gaming could not have been related to a Ponzi scheme that did not exist.

If the transfers at issue in this case were made to Barkany's mortgage lender, a grocery store, or utility provider, Plaintiff would not claim they were made with actual fraudulent intent or that the Ponzi scheme presumption applied.  In fact, the only actions Plaintiff has brought to recover allegedly fraudulent conveyances are against Ponzi scheme investors, insiders, professionals involved in Ponzi scheme transactions, charities, and loan recipients.  Between May 10, 2017 and May 12, 2017, Plaintiff filed 36 fraudulent conveyance adversary proceedings in Barkany's bankruptcy proceeding (Docket Nos. 467, 470-501, 503-505).  Of those 36 cases, 33 were against charities (transfers without consideration), 2 were against investors, and one against a loan recipient.  With the exception of Borgata, there is not a single case filed by Plaintiff seeking to recover a transfer to a business (or to any other transferee for that matter) where the transfer was for fair consideration.  While some people may not approve of the casino industry, those views do not change the fact that casinos are legitimate businesses, existing pursuant to and highly regulated by specific laws and regulations.  As noted above, the casino industry generated 1.7 million jobs and contributed $38 billion in tax revenue in 2013.  They are legally entitled to be, and must be treated like any other business or industry.  Just like a mortgage lender, grocery store, or restaurant, casinos offer fair consideration in the form of the opportunity of winning and entertainment value.  *In re Chomakos,* 69 F.3d 769 (6th Cir. 1995).  Plaintiff has no justification for bringing the claims here that he would not and has not brought against Barkany transferees in other legitimate businesses unrelated to the Ponzi scheme.  Plaintiff cannot be allowed hold the casino industry to a different standard.

Absent the Ponzi scheme presumption, the Trustee's claims for actual fraud must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b). *In re Dreier LLP*, 452 B.R. 391 (Bankr. S.D.N.Y. 2011). As set forth above, there are neither specific allegations of fraud, nor allegations regarding the badges of fraud. This "lack of specific allegations setting forth such badges of fraud, or otherwise implicating the defendant in intentional wrongdoing against creditors" is fatal to the Trustee's claim of intentional fraudulent conveyance. *In re Actrade Financial Technologies Ltd.*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005).

D.   Plaintiff's Complaint Fails to Plead Borgata's Knowledge of Fraud

It is important to repeat that one of the elements of Plaintiff's actual fraud claim under NY DCL §276 is that the transferee had "knowledge of the fraud at the time of the [transfer]." NY DCL §278(1). Plaintiff makes no attempt to plead that Borgata had the requisite knowledge. Thus, even if the Court were to accept Plaintiff's Complaint as adequately pleading actual fraud, the NY DCL §276 claim must still be dismissed.

Plaintiff incorrectly attempts to shift the burden on Borgata to establish a "good faith" defense, which is only applicable to the claim arising under Bankruptcy Code §548(a)(1)(A) . Both the New York statute and applicable case law clearly require an aggrieved creditor to demonstrate a transferee's actual or constructive knowledge of the fraud where fair consideration is provided. "The existence of a knowledge requirement reflects the [NY DCL] policy of protecting innocent creditors or purchasers for value who have received the debtor's property without awareness of any fraudulent scheme. Thus, an appropriate creditor may void or disregard a fraudulent conveyance to any person 'except a purchaser for fair consideration without knowledge of the fraud at the

10

time of the purchase.'" *HBE Leasing Corp. v. Frank*,48 F.3d 623, 636 (2d Cir. 1995) *quoting* NY DCL §278(1).

The case cited in Plaintiff's May 5, 2017 Letter (Docket No. 38), *In re Janitorial City Close-Out Corp.*, 2013 WL 492375 (Bankr. E.D.N.Y. 2013), is taken out of context and completely inapplicable to the facts of this case.  In the *Janitorial* case, the transfers at issue were not made for adequate consideration.  Thus, NY DCL §278(1) did not apply and was not discussed in the *Janitorial* opinion.  Instead, the court specifically found that the transferee ("Mr. Albert") received $160,000 from the debtor in exchange for $80,000. *Id*. at *1.  Directly refuting Plaintiff's suggestion here, Mr. Albert was only required to disgorge $80,000, the difference in value between what he received and what he gave in exchange.  There was no allegation that Mr. Albert knew of the debtor's fraudulent scheme and he was not required (nor did the Plaintiff request) return of the transfers for which there was adequate consideration.  The same result applies here.  Because gaming is adequate consideration as a matter of law, it is Plaintiff's burden to allege and establish knowledge.  Plaintiff failed to do so and his actual fraud claim under NY DCL §276 must be dismissed.

Of course, Plaintiff will argue Borgata had knowledge of the fraud.  It is unlikely Plaintiff will argue Borgata actually knew about Barkany's Ponzi scheme.  That would implicate Borgata in a criminal conspiracy, a suggestion Plaintiff will certainly not hazard lightly or without the specific proof he would need to back it up.  It is anticipated he will instead suggest that Borgata had constructive notice of the alleged fraud.  "Constructive knowledge of fraudulent schemes will be attributed to transferees who were aware of circumstances that should have led them to inquire further into the

circumstances of the transaction, but who failed to make such inquiry." *HBE Leasing Corp.* at 636.   It is further anticipated that Plaintiff will revive BARM's comical suggestion that constructive knowledge should be attributed to Borgata essentially because Barkany was young and allegedly inexperienced.   In his response to Borgata's pre-motion letter in this case, Plaintiff remarked "[Barkany] was a 24 year old high school graduate with no business track record."  May 5, 2017 Letter (Docket No. 38).

The facts recited in Plaintiff's Complaint demonstrate Borgata did not and could not have had constructive notice of the Ponzi scheme or any other fraud.  Most important, and perhaps the sad irony of this case, it was Plaintiff's predecessor in interest, BARM, that intentionally declined to bring Barkany's scheme to light for more than 18 months after it was discovered.  Complaint ¶¶28-30.  Every transfer at issue here took place prior to BARM's disclosure of the New York Affidavit of Confession and Judgment.  Complaint ¶51.   Second, there is no support in the case law (or anywhere else) that Borgata had an extraordinary duty to investigate Barkany because he was 24 years old and only had a high school education.   Plaintiff's suggestion that Borgata should have known something was amiss because Barkany was young is comical given that the original BARM Plaintiffs loaned or invested in excess of $66 million with Barkany, yet they apparently had no reason to question Barkany's *bona fides*.

Plaintiff will certainly point to *In re Armstrong*, 259 B.R. 338 (E.D. Ark. 2001), another case involving a Ponzi scheme and gaming.  There the debtor, Murray Armstrong ("Armstrong"), was a small town attorney in Arkansas who encountered financial problems in 1990.  In an attempt to deal with these problems, Armstrong began operating a Ponzi investment project based non-existent timber contracts and sham land

transactions.  He also began gaming in 1994 at riverboat casinos in Louisiana and Mississippi.  In 1995, Armstrong entered upon a check kiting scheme and embezzled large sums of money from his clients.  Armstrong had a line of credit at a Harrah's casino in Louisiana.  The Trustee in Armstrong's bankruptcy sought to recover transfers to Harrah's of $357,000 as fraudulent conveyances.  The Bankruptcy Court dismissed the Trustee's actual fraud claim arising under Bankruptcy Code §548(a)(1)(A) on the basis that Harrah's acted in good faith toward the Armstrong..

The District Court did reverse, but the facts of that case are light years from the case here.  First, the Bankruptcy Court in *Armstrong* specifically held that the debtor actually intended to defraud his creditors by gambling because he started gaming as part of the scheme to solve his financial problems.  *Id.* at 339, 342 ("Endeavoring to pay his Ponzi debts, debtor began gambling in 1994....").  The holding that Armstrong committed actual fraud was not at issue in the appeal.  There is no such finding in this case or facts alleged upon which to base such a finding.  On the contrary, Barkany began playing at Borgata long before the Ponzi scheme and its related financial difficulties began.  According to the Complaint, Barkany's Ponzi scheme began in December 2009.  Complaint ¶37.  Barkany began playing at Borgata in August 2008, more than a year before the Ponzi scheme.  Certification of Jeremy Klausner at ¶1, Exhibit 1.

The District Court's holding in *Armstrong* was also based on facts demonstrating Harrah's had specific knowledge of Armstrong's financial difficulties and impending insolvency.  The District Court determined that after approving Armstrong's application for credit, Harrah's became aware of certain circumstances to place it on inquiry notice of Armstrong's potential insolvency.  The court relied, in particular, on Armstrong's bank

balances at the time credit limits were raised, an entry in Armstrong's file at Harrah's that Armstrong had a federal tax lien filed against him, and most important, a Harrah's credit supervisor's memorandum stating '[w]e appear to have Mr. Armstrong (debtor) in over his head. I strongly suggest no more increases."  Despite evidence reflecting Armstrong's bank balances "varied between a minus $317,717.93 in May when the credit line was extended to a minus $132,717.73 in September when the credit line was closed," and the supervisor's warning, Harrah's continued to increase Armstrong's credit.  *Id.* at 342. Given Harrah's knowledge and recognition of Armstrong's deteriorating financial condition, the District Court held Harrah's did not act in good faith in continuing to extend credit.  *Id.* at 344.

First, *Armstrong* would only be applicable to Plaintiff's Bankruptcy Code §548(a)(1)(A) claim.  Under New York law it is clear that Plaintiff must establish the transferee had actual or constructive knowledge of the debtor's fraud.  NY DCL §§276, 278(1).  Second, even in the light most favorable to Plaintiff, there are no facts alleged in this case to get him past a showing of actual fraud, much less to the good faith defense. Unlike Armstrong, Barkany did not play at Borgata as a result of his Ponzi scheme.  He started gaming more than a year before the scheme even began.  That distinction alone makes these cases a world apart.  Absent a finding of actual fraud in this case, the Court need not reach the issue of good faith.  In other words, Borgata's good faith defense is irrelevant here because Plaintiff has failed to state a cause of action for actual fraud in the first instance.

**Point III**

PLAINTIFF'S CLAIMS FOR CONSTRUCTIVE FRAUD
MUST BE DISMISSIED BECAUSE THERE IS
UNDERLINE FAIR CONSIDERATION AS A MATTER OF LAW

Each of Plaintiff's three claims for constructive fraudulent conveyance fails as a matter of law because an element of each claim is lack of fair consideration.  *See* Complaint (First, Second, and Fifth Claims for Relief).  The predicate element of all three claims, whether arising under NY DCL §§273, 275 or under  11 U.S.C. §548(a)(1)(B)(ii), is that the debtor receives "less than a reasonable equivalent value in exchange" for the transfers.  As noted above, it is well settled that the opportunity of winning more than the amount bet and the entertainment value of gaming constitute fair consideration, and thus gaming losses are not fraudulent transfers as a matter of law.  *In re Chomakos,* 69 F.3d 769 (6th Cir. 1995).  Correspondingly, all Plaintiff's claims for constructive fraudulent conveyance fail as a matter of law.

The concept that transfers to Borgata constitute constructive fraud also defies the undisputed facts of this case and the basic premise of what constitutes a constructively fraudulent conveyance.   Under New York law, the repayment of an antecedent debt constitutes fair consideration.  *In re Sharp*, 403 F.3d at 54, *citing HBE Leasing Corp.*, 48 F.3d at 634.  Plaintiff's Complaint alleges that Barkany transferred proceeds of the Ponzi scheme to Borgata for the benefit of Borgata.  Complaint at ¶46.  What Plaintiff knows, but fails to include in his Complaint, is that the transfers at issue were made in repayment of antecedent debts.  Borgata extended credit to Barkany.  The transfers at issue were repayment of those obligations. As a factual and legal matter,

15

Barkany was not defrauding creditors by making the transfers at issue.  He was paying one of his creditors.

> Thus, the [NY DCL] does not bestow a broad power to reorder creditor claims or to invalidate transfers that were made for fair consideration, at least where no actual intent to hinder, delay, or defraud creditors has been shown. As the definition of "fair consideration" in DCL § 272 makes clear, even the preferential repayment of pre-existing debts to some creditors does not constitute a fraudulent conveyance, whether or not it prejudices other creditors, because "[t]he basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy *some* of his creditors; it normally does not try to choose among them."

*HBE Leasing Corp.*, 48 F.3d at 634 (internal citations and quotations omitted).  Both prior to and after the transfers at issue, Borgata was a creditor of Barkany.  Plaintiff is asking this Court to use fraudulent conveyance law to choose among Barkany's creditors, and his claims based on constructive fraudulent conveyance must be dismissed.

### Point IV

### PLAINTIFF FAILS TO STATE A CLAIM
### FOR UNJUST ENRICHMENT

Unjust enrichment is defined as "the receipt by one party of money or a benefit to which it is not entitled, at the expense of another."  *Abacus Federal Savings & Loan v. Lim*, 75 905 N.Y.S.2d 585 (1st Dept. 2010).  It is a legal obligation generally created in the absence of agreement "when one party possesses money that in equity and good conscience he ought not to retain and that belongs to another."  *Parsa v. State of New York,* 64 N.Y.2d 143, 148 (1984).  While dependent upon equitable principles "in the sense that broad considerations of right, justice and morality apply to it," a claim for unjust enrichment (or money had and received) has long been considered an action at law.  *Id*.  The essential elements for a claim of unjust enrichment are (1) the defendant's receipt of money belonging to the plaintiff, (2) the defendant's benefitting from receipt of

the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money.  22A N.Y. Jur. 2d, Contracts, § 520, at 244.

Plaintiff's unjust enrichment claim fails because the *sina qua non* of unjust enrichment is the receipt of money from a plaintiff to which the defendant is not entitled.  Borgata was entitled to the transfers from Barkany.  As set forth in detail above, the transfers were for the repayment of credit extended to Barkany by Borgata.  Borgata was therefore entitled to the money.  As also noted above, Borgata was legally required to effect repayment of Barkany's markers for credit advances not repaid within 45 days.  Simple logic dictates transfers cannot be considered inequitable or unjust where they are required by law.  Plaintiff's claim for unjust enrichment must therefore be dismissed.

### Point V

### REPLEADING WOULD BE FUTILE

It is generally understood that leave to replead should be "liberally granted." *Rutolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2006), *citing Foman v. Davis*, 371 U.S. 178, 182 (1962).  Leave to replead, however, should be denied where amending the pleading would be futile.  *Id*.  In this case, leave to re-plead would be futile because there is no set of facts Plaintiff can plead that would satisfy the plausibility standard.

With respect to the claims for actual fraud, there are no facts establishing actual fraud or any of the badges of fraud.  As set forth above, the Ponzi scheme presumption does not apply to save Plaintiff's actual fraud claims. The transfers to Borgata were in the usual course of a legitimate business unrelated to Barkany's Ponzi scheme.  It is telling that Plaintiff has not sought to recover any other transfer made to any other legitimate businesses for fair consideration.  With respect to the claims for constructive fraud, the

general chronology shows that Barkany gambled on credit at Borgata and made payments against his outstanding credit balance as required by New Jersey law.  No facts can overcome the law in this case.  Gambling losses are not fraudulent conveyances as a matter of law.  The opportunity to win and the entertainment value of gambling are fair consideration.  *In re Chomakos,* 69 F.3d 769 (6th Cir. 1995).  Payments on account of an antecedent debt are fair consideration.  *In re Sharp*, 403 F.3d at 54, *citing HBE Leasing Corp.*, 48 F.3d at 634.  Finally, the elements of unjust enrichment can never be plead.  Borgata was not only entitled to the transfers, they also were required by law.  There is no set of facts that the Trustee can plead that will lead to a different result on any of the claims in this case.  Allowing the Trustee to replead would therefore be futile and his claims against Borgata should be dismissed with prejudice.

### Conclusion

Casinos are legitimate businesses, existing pursuant to and highly regulated by specific laws and regulations.  The reason casinos exist, as alluded to above, is their economic impact.  The generation of 1.7 million jobs and contribution of $38 billion in tax revenue to federal, state, and local governments is significant and beneficial to the United States' economy.  They must be treated like any other business.  Instead, Plaintiff seeks to hold Borgata accountable to a different standard.  This is clearly evidenced by the fact that Borgata is the only business entity giving fair consideration and unrelated to Barkany's Ponzi scheme that is the target of a fraudulent conveyance action.

Plaintiff is not entitled to hold Borgata to a different standard.  His Complaint fails to state a cause of action against Borgata on which relief may be granted.  The

Trustee did not and cannot plead actual fraud and the constructive fraudulent conveyance claims must be dismissed because it is well settled that gambling losses are not fraudulent conveyances as a matter of law.  Plaintiff's unjust enrichment claim is misplaced since Borgata was entitled to the money at issue.  Given the foregoing, Borgata's motion should be granted in its entirety and with prejudice because repleading any claims against Borgata would be futile.

Dated: Hackensack, NJ
      July 19, 2017                    By:  /s/ Jeremy Klausner
                                     Jeremy Klausner
                                     AGOSTINO & ASSOCIATES, P.C.
                                     *Attorneys for Defendant*
                                     14 Washington Place
                                     Hackensack, NJ 07601
                                     Telephone: (201) 488-5400
                                     jklausner@agostinolaw.com